UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CHRISTIE SCARBOROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:20-cv-00069 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FREDERICK COUNTY SCHOOL | ) | By: Hon. Thomas T. Cullen |
| BOARD, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Christie Scarborough filed this civil-rights suit against the Frederick County School Board ("FCSB"); Steve Edwards, the head of communications for Frederick County Public Schools ("FCPS"); David Sovine, the Superintendent of FCPS; and James Angelo, the Assistant Superintendent of FCPS (collectively, "Defendants"). The crux of Scarborough's complaint is that Defendants engaged in viewpoint discrimination in violation of the First Amendment by (1) deleting her comments criticizing FCPS's COVID-19 protocols and facemask policy from the school system's official Facebook page; (2) blocking her from that Facebook page; and (3) blocking her from the superintendents' official Twitter pages. Scarborough also alleges that in attempting to stifle her online criticism of FCPS's COVID-19 policies, Defendants violated the equal protection and due process clauses of the Fourteenth Amendment, and that FCSB is separately liable for failing to train its employees on lawful social-media policies.

Defendants have filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Scarborough failed to state any viable constitutional claims under 42

U.S.C. § 1983. The motion has been fully briefed, and the court believes that the written arguments of the parties adequately discuss all relevant legal issues such that oral argument would not aid the decisional process.[1]   Although the court agrees with Defendants that Scarborough has not established a viable equal protection claim or procedural due process claim as to Sovine and Angelo, it disagrees as to the First Amendment claim, procedural due process claim as to FCSB and Edwards, and the failure-to-train claim.   Scarborough has sufficiently alleged that the social-media accounts at issue were public forums, and that Defendants engaged in unconstitutional viewpoint discrimination by deleting her comments and blocking her from these public platforms.   Accordingly, the court will grant in part and deny in part Defendants' motion to dismiss.

## BACKGROUND

Scarborough initially filed this suit under 42 U.S.C. § 1983 in the Eastern District of Virginia, seeking monetary damages and an injunction against FCPS and "Does 1-10."  (ECF No. 1.)   FCPS filed a motion to dismiss under Rules 12(b)(3) and 12(b)(6) for improper venue and for failure to state a claim. (ECF Nos. 4–5.)  Before the parties completed briefing on the motion to dismiss, U.S. District Judge John A. Gibney entered an order finding that venue was proper in the Western District of Virginia.  (ECF No. 7.)  Judge Gibney denied FCPS's motion to dismiss and transferred the matter to the Western District of Virginia under 28 U.S.C. § 1406(a).  (*Id.*)  Because Judge Gibney's order did not rule on any substantive matters

---

[1] Scarborough attached multiple exhibits to her opposition. (*See* ECF No. 40.) The court did not consider the exhibits as it declines to convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Zak v. Chelsea Therapeutics Int'l., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." (internal quotation marks omitted)).

apart from venue, this court entered an order stating that it "considers the remaining matters in the motion to dismiss as still pending," and set a hearing date for the motion to dismiss. (ECF No. 11.)

Prior to the hearing on the motion to dismiss, Scarborough sought leave to file an amended complaint. (ECF No. 13.) The court granted Scarborough leave to file an amended complaint over FCPS's objection and denied FCPS's motion to dismiss as moot. (ECF Nos. 15–17, 21.) In addition to FCPS and "Does 1–10," the Amended Complaint named Edwards, the head of communications for FCPS, as a defendant. (*See* Am. Compl. [ECF No. 16] ¶ 4.) On November 9, 2020, FCPS and Edwards filed a motion to dismiss Scarborough's Amended Complaint. (ECF Nos. 22–23.)

The court held a hearing on the motion on December 7, 2020. (ECF No. 32.) At the conclusion of the hearing, the court granted in part and denied in part the motion to dismiss, and later issued an order to that effect. (*See* ECF Nos. 32, 33.) First, the court dismissed FCPS as a defendant with prejudice, because, under Virginia law, a plaintiff must sue a school board, not the school itself. (*See id.*) Second, the court dismissed Does 1–10 without prejudice because the Amended Complaint did not state a claim against them. (*See id.*) Third, because the court dismissed FCPS with prejudice and Scarborough failed to specify whether she was suing Edwards in his official or personal capacity—leaving the court unable to appropriately analyze the substantive claims—the court dismissed Counts I and II for failure to state a claim. (*Id.*) Finally, the court denied the rest of Defendants' motion insofar as it argued that Scarborough had failed to allege claims for violations of the First and Fourteenth Amendments or to properly request injunctive relief. (*Id.*) The court gave Scarborough until January 21,

2021, to file a Second Amended Complaint.  (*Id.*)

On December 28, 2020, Scarborough filed her Second Amended Complaint.  (*See* 2d Am. Compl. [ECF No. 36].)   Scarborough now names four defendants: FCSB, Edwards, Sovine, and Angelo. She brings three causes of action under 42 U.S.C. § 1983: (1) a claim against all four defendants for "nominal damages" and injunctive relief based on alleged First Amendment and equal protection violations; (2) a claim against all four defendants for alleged violations of her procedural due process rights; and (3) a claim against FCSB for failing to train its employees "to not block dissenting voices on social media."  (*See id.* ¶¶ 6–49.)  Scarborough names Edwards, Sovine, and Angelo in their official capacities. (*Id.* ¶ 4.)

Scarborough alleges the following facts in support of these three § 1983 claims.  She asserts that FCSB maintains a Facebook page called "*Frederick County Public Schools*," which was, at the relevant time, registered as a "Government Organization."[2]  (*Id.* ¶¶ 9–11.) According to Scarborough, this Facebook page is open to the general public and invites anyone to post comments on it.  (*Id.* ¶ 12.)  Scarborough further asserts that the Facebook page "places no restrictions on what users may post," and that "users may freely post their sentiments on all subjects."  (*Id.* ¶ 13.)

In September 2020, Scarborough allegedly posted comments on the FCPS Facebook page "concerning the school's re-opening, COVID-19 masks, disability rights, and child abuse."  (*Id.* ¶ 15.)  Scarborough alleges that "[a]s a direct result of" her comments, Defendants "censored" her by deleting her comments and blocking her ability to make further comments.

---

[2] In the Second Amended Complaint, Scarborough alleges that the FCPS Facebook page "has been altered since the lawsuit began."  (*Id.* ¶ 11.)   Apparently, the FCPS Facebook page is no longer registered as a "Government Organization." (*Id.*)

(*Id.* ¶ 16.) Specifically, Scarborough alleges that Edwards was responsible for deleting her comments and blocking her from the Facebook page. (*Id.* ¶ 17.)  On September 8, 2020, Edwards, allegedly "using a fake Facebook user name" registered to a man named "Steve Cornwell," sent a private message to Scarborough stating: "Ms. Scarborough—We have decided to ban you from the FCPS Facebook page for continued violations of our terms and conditions." (*Id.* ¶ 18.) Scarborough further avers that Cornwell's (or Edwards's) purported reason for banning her—repeated violations of FCSB's terms and conditions—is false, as the page had never published any terms and conditions.  (*Id.* ¶ 19.)

According to Scarborough, approximately one month after she filed this suit, Superintendents Sovine and Angelo blocked her from their official Twitter accounts. (*Id.* ¶¶ 20–21.) Scarborough alleges that Sovine and Angelo administer these Twitter accounts in their official capacities as the chief administrators of FCPS.  (*Id.*)  Scarborough further claims that, "[o]n the same day [she] was blocked," she lodged a complaint with FCSB's attorney and was "unblocked" from Sovine's and Angelo's Twitter accounts.  (*Id.*)

## MOTION TO DISMISS STANDARD

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While a complaint does not need "detailed factual allegations,"

complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

To allow for the development of a potentially meritorious claim, federal courts are obligated to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (alteration in original) (citation omitted). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted).

## ANALYSIS

### A. Count I: 42 U.S.C. § 1983—First Amendment and Equal Protection Clause

Defendants argue that the first of Scarborough's three § 1983 claims should be dismissed as to all four defendants, but for different reasons. As to the First Amendment claim premised on Edwards's and FCSB's alleged acts of deleting her critical comments and banning her from the FCPS Facebook page, Defendants argue that Scarborough has failed to allege enough facts—including the specifics of the comments at issue—to support this claim. Regarding the First Amendment claim stemming from Sovine's and Angelo's use of Twitter, Defendants argue, among other things, that Scarborough has failed to credibly allege that these school administrators maintained these accounts in their official capacities. Finally, defendants

argue that the equal protection aspect of Count I fails because Scarborough's allegations fail to establish the elements of an equal protection claim. The court will address each argument in turn.

### a. Alleged First Amendment Violation: Facebook

Defendants argue that Scarborough's First Amendment claims against FCSB and Edwards are too vague and fail to state a claim. Specifically, Defendants contend that Scarborough's allegations that FCSB and Edwards "censored" her are devoid of sufficient factual detail to identify which act or acts of free speech these two defendants allegedly abridged, including "what comments or statements were made, blocked, or deleted." (ECF No. 38 at 11.) As the argument goes, neither the court nor Defendants can evaluate whether Scarborough engaged in any protected First Amendment activity.

Scarborough has adequately pleaded a First Amendment claim against Edwards and FCSB. To determine whether Defendants violated Scarborough's First Amendment rights, the court must engage in a three-step analysis.[3] First, the court must determine whether the speech at issue is "protected by the First Amendment." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1992). Assuming that it is, the court "must then assess whether the putative forum is susceptible to forum analysis at all." *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 564 (S.D.N.Y. 2018). If forum analysis applies, the court must lastly assess whether "the extent to which the Government [has] control[led]

---

[3] Scarborough also brings this claim under Article I, section 12 of the Virginia Constitution, which is Virginia's analogue to the First Amendment of the federal Constitution. Because the Supreme Court of Virginia has held that Article I, section 12 of the Virginia Constitution is "coextensive with the free speech provisions of the federal First Amendment," the court analyzes these claims together. *Elliot v. Commonwealth*, 593 S.E.2d 263 (Va. 2004).

access" is permissible given the type of forum at issue. *Cornelius*, 473 U.S. at 800.

Scarborough easily satisfies the first element. As alleged in her Second Amended Complaint, the speech at issue consists of her Facebook comments about FCPS's COVID-19 protocols. This type of public expression—*i.e.*, "speech on matters of public concern"—falls squarely within the ambit of First Amendment protection. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 600 (2008); *Knight*, 302 F. Supp. 3d at 565. And there is no allegation that Scarborough's online criticism contained vulgar, obscene, threatening, or otherwise legally objectionable content pushing it outside the realm of protected speech.

Defendants argue that Scarborough's allegations about the speech at issue are nevertheless too vague and conclusory to satisfy the first prong of the analysis and, by extension, survive a motion to dismiss. In support of this argument, Defendants point to Scarborough's purported failure to identify "what comments or statements were made, blocked, or deleted." (ECF No. 38 at 11.) Defendants imply that Scarborough needed to attach or include copies or excerpts of her online comments, but that is not required at this stage of the proceeding. By describing, in detail, the nature and content of the comments that she posted, Scarborough has met the required threshold. *See* Fed. R. Civ. P. 8(a)(2) (providing that a pleading must contain "a short plain statement of the claim showing that the pleader is entitled to relief"). Scarborough is not required, for purposes of pleading a First Amendment claim related to her online expression, to provide a verbatim or hard-copy record of those statements. *See Davison v. Randall*, 912 F.3d 666, 675 (4th Cir. 2019) ("Although neither Davison or Randall remember the precise content of Davison's comment, Randall testified that it contained 'accusations' regarding School Board members' and their families' putative

conflicts of interest related to municipal financial transactions, suggesting, in Randall's opinion, that School Board members had been 'taking kickback money.'").

Scarborough also satisfies the second element for this claim, the public-forum doctrine's application to Defendants' Facebook page. The Fourth Circuit's recent decision in *Davison* is instructive. In that case, the court considered whether an elected county supervisor's Facebook page constituted a traditional public forum or limited public forum, triggering different levels of First Amendment protection. *Id.* at 681. Ultimately, the Fourth Circuit concluded that the Facebook page at issue, at a minimum, met the requirements of a limited public forum, in that the government official "swathe[d] the [Chair's Facebook Page] in the trappings of her office" by, among other things: (1) posting her official title on the page; (2) describing the page as belonging to a government official; (3) listing her government contact information; (4) linking to official government websites; and (5) posting content that had "a strong tendency towards matters related to [her] office." *Id.* at 680–81.

Scarborough's allegations regarding FCPS's Facebook page easily clear the public-forum threshold for a social-media platform, as outlined in *Davison*. Unlike the Facebook page in that case, which belonged to an individual government employee, the Facebook page at issue here is an arm of the government entity itself. Moreover, Scarborough alleges that FCPS's Facebook page was registered as a "Government Organization" and continues to hold itself out as a platform for unlimited and unrestricted discussion on matters related to school operations. In sum, Scarborough has sufficiently alleged that the official FCPS Facebook page is a public forum of some kind.

Scarborough has also satisfied the third element for this First Amendment claim. As

the Fourth Circuit explained in *Davison*, where a plaintiff contends that the government has engaged in viewpoint discrimination, it is unnecessary to analyze whether the government's conduct was permissible based on the type of public forum at issue.  *Id.* at 687.  Viewpoint discrimination, which "targets" the specific views or opinions of the speaker, rather than the subject matter generally, is "prohibited in all forums."  *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 n.2 (4th Cir. 2006); *see also Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 830– 31 (1995)) ("When government creates such a forum, in either a literal or 'metaphysical' sense, . . . some content- and speaker-based restrictions may be allowed. . . .  However, even in such cases, what we have termed 'viewpoint discrimination' is forbidden." (citations omitted)).

In this case, Scarborough alleges that FCSB—by and through Steve Edwards, the head of communications for the school system—deleted her comments as the result of viewpoint discrimination.[4]  Scarborough alleges that after she posted comments criticizing aspects of the school district's reopening plans and mask mandates, Edwards deleted those comments, and later, using the *nom de guerre* Steve Cornwell, informed her that she would be blocked from the FCPS Facebook page entirely.  These allegations strongly support the inference that Defendants took these actions because they did not like what Scarborough had said about their policies, or, to put it in First Amendment terms, because they were "impermissibly motivated by a desire to suppress a particular point of view."  *Cornelius*, 473 U.S. at 812–13.

---

[4] Although Defendants do not raise this argument, Edwards was unquestionably acting in his official capacity, "under color of state law," when he allegedly took these actions.  As the Fourth Circuit recognized in *Davison*, "[i]n the context of an alleged First Amendment violation, in particular, this Court has found that a challenged action by a governmental official is fairly attributable to the state when the sole intention of the official in taking the action was to suppress speech critical" of the government organization and its principals.  912 F.3d at 680 (citation and internal quotation marks omitted).

Because Scarborough's Facebook allegations satisfy the elements of a First Amendment claim, the court will deny Defendants' motion to dismiss on these grounds.

### b. Alleged First Amendment Violation: Twitter

The second part of Scarborough's First Amendment claim stems from FCPS Superintendent David Sovine's and Assistant Superintendent James Angelo's alleged blocking of Scarborough from their official Twitter accounts. Defendants raise several arguments in support of their motion to dismiss this First Amendment claim, and these two defendants, from the lawsuit. First, they contend that Scarborough failed to allege facts establishing that her attempted use of these Twitter platforms constituted protected First Amendment activity. Second, Defendants allege that Scarborough failed to adduce enough facts about the Twitter accounts to trigger First Amendment forum analysis. Third, Defendants argue that, even assuming Scarborough has alleged that she engaged in protected First Amendment activity on Twitter, she has failed to allege that Sovine and Angelo were acting in their official capacities— or under "color of law"—when they blocked her from their pages.

The Second Circuit's recent decision in *Knight*, which addresses these arguments on strikingly similar facts, is persuasive, and the court will adopt its reasoning. *See Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019). In that case, the plaintiffs sued President Donald J. Trump for unlawful viewpoint discrimination after he blocked them from his Twitter account, which was "otherwise open to the public at large." *Id.* at 230. The court noted that although the account, which the President activated in 2009 (almost eight years before he assumed office), was initially private, "[t]he public presentation of the Account" after he became president bore "all the trappings of an official state-run account."

11

*Id.* at 231.  For example, the President and members of his administration regularly described the account as official, and the President regularly utilized the account as one of the "main vehicles for conducting official business."  *Id.* at 231–32.

Against that backdrop, the Second Circuit analyzed the President's arguments, which were nearly identical the ones raised here.  First, the court rejected the President's contention that, at the time he blocked the plaintiffs from his Twitter account, he "was exercising control over a private, personal account," or, stated differently, that he was not acting in his official capacity.  *Id.* at 234.  The court concluded that the account itself, at least after his inauguration in 2017, was presented as belonging to the President of the United States, and that he and others used the account on a regular basis to communicate with the public about the administration, including administration policy and personnel changes.  *Id.* at 235–36.  Because the President's Twitter account had "interactive features open to the public, making public interaction a prominent feature of the account," these unique characteristics transformed what would otherwise be a private social-media platform into a public forum.  *Id.* at 236.  Although the court cautioned that "not every social media account operated by a public official is a government account," and that each case requires a "fact-specific inquiry," it nevertheless concluded that the President had exercised official state action in blocking the plaintiffs from Twitter.  *Id.*

Next, the court rejected the President's argument that his Twitter account was not a public forum, concluding that since the President became a government official, he purposefully opened his once-private account for public discussion, regularly used it "as an official vehicle for governance," and "made its interactive features accessible to the public

without limitation." *Id.* at 237. Finally, the court held, in line with the Fourth Circuit's conclusion in *Davison*, that the President's act of blocking his critics from his Twitter page amounted to impermissible censorship and unconstitutional viewpoint discrimination. *See id.* at 238–39.

Scarborough has stated a viable First Amendment claim against Sovine and Angelo. First, Scarborough has established that her attempted interaction with Sovine's and Angelo's Twitter accounts constituted protected First Amendment activity. *See Knight*, 302 F. Supp. 3d at 550 (recognizing that following someone on Twitter enables an individual to engage in a variety of expressive activity, including interacting with other followers about Tweets and replying to and commenting on content). Second, Scarborough's allegations that these public officials operated their Twitter accounts in their official capacities support the inference that, at a minimum, these platforms are limited public forums triggering some level of First Amendment protection. Third, the sequence of events alleged in the Second Amended Complaint—Scarborough's critical Facebook comments, followed by deletion of those comments and being blocked from FCPS's Facebook Page, and later by being blocked from the superintendents' Twitter pages—supports the critical inference that Sovine and Angelo removed her from these social-media platforms as a result of her criticism of their policies and initiation of this lawsuit. In other words, Scarborough has sufficiently alleged that they engaged in viewpoint discrimination. Finally, like the plaintiffs in *Knight*, Scarborough adequately alleges that both administrators operate their Twitter accounts in their official capacities as the chief administrators for the school system. Although her assertion is conclusory, it is adequate to satisfy her threshold burden of alleging official action in support

of her First Amendment claim.

The ultimate determination of whether the administrators operated these Twitter accounts in their official capacities will be fact specific and require Scarborough to develop evidence through discovery about the provenance and history of those accounts, including their registrations, the labels and markers associated with them, and the manner and frequency with which Defendants utilize them to conduct and promote school operations.  But given the relative novelty of this Twitter claim, and attendant constitutional considerations, the court concludes that it is better resolved after factual development, not at the motion to dismiss stage.  The court will therefore deny Defendants' motion to dismiss the Twitter First Amendment claim as to Sovine and Angelo.

### c.  Equal Protection Violation

As the final aspect of her first cause of action, Scarborough alleges that Defendants collectively violated the equal protection clause of the Fourteenth Amendment "by blocking [her] and her comments" from FCPS's Facebook page.  (2d Am. Compl. ¶ 26.)  Defendants argue that, even assuming the underlying allegations are true, they fail to give rise to an equal protection claim.  The court agrees.

The Fourteenth Amendment of the Constitution provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The equal protection requirement does not take from the States all power of classification, . . . but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).

The elements of an equal protection claim are well settled.  The plaintiff "must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated[,] and that the unequal treatment was the result of intentional or purposeful discrimination." *Kolbe v. Hogan*, 849 F.3d 114, 146 (4th Cir. 2017) (en banc) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).  The plaintiff must accordingly "allege facts which show that the defendants treated [her] differently from others with whom she was similarly situated." *Mills v. City of Roanoke*, 518 F. Supp. 2d 815, 822–23 (W.D. Va. 2007) (citing *Veney*, 293 F.3d at 730–31) (granting a motion to dismiss an equal protection claim because the plaintiff failed to allege that she was treated differently from anyone else within the jurisdictional reach of the policy).  For purposes of this analysis, "persons who are in all relevant respects alike are 'similarly situated.'" *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 706 (E.D.N.C. 2009) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Scarborough has failed to meet this threshold requirement for an equal protection claim.  Across three iterations of her complaint, she has never alleged any facts about other individuals engaging in First Amendment activity on the social-media platforms at issue, let alone that Defendants treated any similarly situated social-media posters differently. Scarborough argues in her opposition that she has been treated differently from other parents because they were not blocked on Facebook.  (*See* ECF No. 40 at 4.)  But Scarborough would have needed to allege that she was treated differently from other parents who had also posted critical comments on the FCPS Facebook page.  Scarborough never alleged anything about any other parents in her Second Amended Complaint.  Without those allegations, Scarborough's generalized and conclusory assertion that Defendants' actions violated her

equal protection rights is simply not enough to satisfy her burden of setting forth plausible, particularized facts demonstrating unequal treatment.  Because Scarborough has failed to plead plausible facts despite multiple opportunities to bring this claim, the court will dismiss Scarborough's equal protection claim with prejudice.

### B. Count II: 42 U.S.C. § 1983—Violation of Due Process Clause

In Count II of her Second Amended Complaint, Scarborough alleges that Defendants violated her procedural due process rights by deleting her comments from the FCPS Facebook page and later blocking her from that page without notice and an opportunity to be heard. Defendants move to dismiss this claim, arguing that because Scarborough has not established any constitutional violation, she has not established that she was entitled to any due process. Regarding Defendants Sovine and Angelo, Defendants add that, even assuming Scarborough were able to establish a constitutional violation, her factual allegations demonstrate that she received adequate due process because she was unblocked from Twitter on the same day after calling FCPS's attorney.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law.  U.S. Const. amend. XIV, § 1.  "To establish a violation of procedural due process, plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (citing *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 826 (4th Cir. 1995)).  As to the first element, a plaintiff must demonstrate that she had a "constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (citation omitted).  If the

plaintiff has not been deprived of a protected liberty or property interest, then the question of whether she was afforded due process is "irrelevant, for the constitutional right to 'due process' is simply not implicated." *Iota Xi Chapter of Signa Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (citation omitted).  The "broad concept of liberty includes the right to free speech, though the right remains subject to reasonable government regulation." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 432 (S.D.N.Y. 2013) (citing *Near v. Minn. ex rel. Olson*, 283 U.S. 697, 707–08 (1931)).  For the second element, the state's deprivation of the liberty or property interest "can be by physical deprivation, . . . or by a regulation that deprives an owner of [the property's economic value]." *Sansotta*, 724 F.3d at 540 (citations omitted). Finally, the plaintiff must show "that the procedures employed were constitutionally inadequate." *Patterson*, 566 F.3d at 145.

The court first notes that despite Scarborough bringing Count II against "all Defendants," the claim involves solely the facts surrounding Facebook.  (*See* 2d Am. Compl. ¶ 33 (stating that Defendants should have (1) informed her that her Facebook comments were subject to being deleted; (2) informed her that she was subject to being permanently blocked from Defendants' Facebook page; (3) informed her as to why her Facebook comments were offensive; and (4) given her an opportunity "to appeal the decision to permanently ban her from their Facebook page").)  In other words, Scarborough's Count II allegations seemingly involve only FCSB and Edwards.  Scarborough, however, states that "Defendant[s] cannot just ban Plaintiff.  There must be rules and regulations before blocking."  (*Id.* ¶ 34.)  Because this allegation could be construed against Sovine and Angelo as well (as they allegedly blocked Scarborough on Twitter), the court will address this procedural due process claim against all

Defendants out of an abundance of caution.

### a.  FCSB and Edwards

Defendants raise a one-sentence argument regarding the procedural due process claim as it pertains to FCSB and Edwards: "Scarborough has not established that she was entitled to any due process as she has not established a violation of any constitutionally protected right in the first instance." (ECF No. 38 at 10.)  As explained in detail above, Scarborough has adequately pleaded a violation of her First Amendment rights relating to FCSB's and Edwards's actions on Facebook.  Moreover, Scarborough alleges that she is still blocked from FCPS's Facebook page, and that she was not given sufficient process before or after the alleged constitutional deprivation.  As this is the only argument Defendants raise regarding FCSB and Edwards, the court's analysis must cease here.  The procedural due process claims against FCSB and Edwards may accordingly proceed.

### b.  Sovine and Angelo

Regarding Sovine and Angelo, Defendants argue that Scarborough "has affirmatively [pleaded] facts which show that she received due process through contact with FCPS'[s] counsel, after which she obtained relief from the asserted actions of Sovine and Angelo." (*Id.* at 10–11.)  As such, Defendants argue that the claim is "implausible on its face." (*Id.* at 11.)

Resolution of this argument requires a more nuanced analysis than Defendants' motion suggests.  The district court opinion in *Davison v. Loudon County Board of Supervisors* is instructive for this claim.  The district court addressed the *pro se* plaintiff's procedural due process claim after the bench trial held in that case.  There, the plaintiff had been blocked from a government official's Facebook page for approximately 12 hours.  *Davison*, 267 F. Supp. 3d at 706.  Like

Scarborough's allegations in the Second Amended Complaint, where she broadly states that the Fourteenth Amendment "requires that the government give 'notice' and an 'opportunity to be heard' *before* taking any adverse action against a citizen," (2d Am. Compl. ¶ 32 (emphasis added)), the plaintiff in *Davison* also "flatly asserted that due process *always* requires the government to provide a hearing *before* imposing a prior restraint on speech," *Davison*, 267 F. Supp. 3d at 719 (first emphasis in original; second emphasis added).

In *Davison*, the court rejected the plaintiff's assertion that a hearing is always required and explained that procedural due process is a flexible concept requiring different protections depending on the circumstances. *Id.* (citing *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) ("The fact that the Supreme Court has held that a predeprivation hearing was required where, for example, government officials obtained an injunction forbidding a political rally, . . . does not mean that such a hearing was required here, where a public official banned a single individual from a Facebook page for a period of 12 hours." (citation omitted)).  In a footnote, the Fourth Circuit affirmed the district court's rejection of the plaintiff's "proposed categorial rule." *Davison*, 912 F.3d at 688 n.8.[5]

The court then examined the Supreme Court's balancing test for procedural due process claims: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not

---

[5] Because Davison "abandoned that asserted categorial rule on appeal," the Fourth Circuit declined to further consider the plaintiff's procedural due process claim. *See id.*

providing additional or substitute procedural requirement[s].” *Davison*, 367 F. Supp. 3d at 720

(internal quotation marks omitted) (quoting *Turner v. Rogers*, 564 U.S. 431, 444–45 (2011);

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

In applying the above analysis, the court first found that the plaintiff’s cognizable First

Amendment interest in commenting on a government Facebook page was “relatively weak.”

*Id.* at 720–21.  Second, the court weighed the comparative risk of erroneous deprivations with

and without additional predeprivation safeguards.  *Id.* at 721.  The plaintiff in that case, like

Scarborough, wanted notice that a comment was “targeted and under review.”  *Id.*  The court

held:

> It is unclear what might be relevant to a government official’s
> decision to ban an individual from their Facebook page besides
> that individual’s activity on the Facebook page in question. That
> activity is apparent without predeprivation procedures. It is
> simply not clear how predeprivation procedures might
> meaningfully reduce the risk of erroneous deprivation.

*Id.*  In other words, the court held that predeprivation procedures would likely not change the

government employee’s decision to block or not block an individual on a social-media account

because there would be no additional information to gather and examine before any decision

is made.

Finally, the court examined the government’s interest in not providing additional

predeprivation procedural requirements.  The court found that “government officials have at

least a reasonably strong interest in moderating discussion on their Facebook pages in an

expeditious manner.”  *Id.*  For example, the court noted that allowing a social-media

commenter to continuously post inappropriate comments pending a predeprivation review

process could prohibit a government official from using the online forum for its intended

purpose, thereby infringing on his First Amendment rights. *Id.* Adding to this, the court found that "[g]iven the prevalence of online 'trolls,' this is no mere hypothetical risk." *Id.* (citation omitted). The court ultimately concluded: "Given (1) the relatively weak First Amendment interest at issue, (2) the uselessness of any predeprivation procedures in this context, and (3) the degree to which imposing predeprivation procedures here would impinge on the government's legitimate interest, the . . . Plaintiff was not entitled to any form of predeprivation hearing before being banned from [the government official's] Facebook page." *Id.* at 721–22.

The court agrees with the analysis in *Davison*, as the facts in that case were almost identical to those presented here. Scarborough alleges that when Sovine and Angelo blocked her on Twitter, she called FCPS's attorney and was unblocked on the same day. Scarborough also notes that she never "tweeted" or "commented" at Sovine's and Angelo's Twitter pages; she merely "followed" their public Twitter accounts. (2d Am. Compl. ¶¶ 21–22.) While the court found that Scarborough stated a plausible First Amendment violation on these facts, the court also recognizes, as the court did in *Davison*, that Scarborough's First Amendment interests as it relates to those Twitter accounts are relatively weak. Unlike Facebook, Scarborough did not publish her views on Twitter. Moreover, the court agrees that predeprivation procedures—such as a hearing or a review process—in the context of social media would not significantly decrease the risk of erroneous First Amendment deprivations. When the only information the government official possesses in deciding to block a person on Twitter is the fact that the individual follows him on Twitter, it is unclear how any predeprivation process would influence the government arbiter or affect the outcome. Finally,

the court concludes that the government has a strong interest in the ability to quickly remove unlawful speech from social-media platforms before awaiting the results of any predeprivation review.  For example, if a government official received a death threat or other violent threat on social media, it is imperative that government officials possess flexibility under the law to promptly remove such comments.  Upon balancing the relevant factors, the court concludes that it cannot grant Scarborough the relief she seeks regarding predeprivation process against Defendants Sovine and Angelo.

Scarborough, however, seemingly also seeks postdeprivation review in Count II (*e.g.*, the ability to appeal the decision to block her).  As explained above, Scarborough was unblocked from Sovine and Angelo's Twitter accounts on the same day she was blocked.  Therefore, as it pertains to Sovine and Angelo, the court also cannot afford relief regarding postdeprivation process on these facts.  *See Davison*, 367 F. Supp. 3d at 722 ("The period during which Plaintiff was banned from Defendants' Facebook page was of such a limited duration that neither Defendant nor the County government had an opportunity to provide any postdeprivation process.").  The court agrees with Defendants Sovine and Angelo that Count II is implausible on its face as to any postdeprivation review.  The court will therefore dismiss Count II against Sovine and Angelo with prejudice.

### C.  Count III: 42 U.S.C. § 1983—Failure to Train

In her final cause of action, Scarborough alleges that Defendant FCSB failed to train its officials on acceptable social-media practices, and that this failure contributed to those officials' infringement of her First Amendment rights.  Defendants move to dismiss this failure-to-train claim, arguing that Scarborough failed to plead sufficient facts establishing a

*prima facie* case for this cause of action under § 1983.

"To impose liability on a supervisor for the failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989)).

To satisfy the first element, a plaintiff must allege that the defendant's subordinates actually violated her rights. *Id.* at 702; *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear . . . that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Under the second element, "in order to have exhibited deliberate indifference, the supervisory power must have had notice of the constitutional or statutory violation, and thereafter must have consciously chosen a particular course of action in response." *Brown*, 308 F. Supp. 2d at 703; *City of Canton*, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such failure under § 1983."). "It is generally acknowledged that, if the supervisory power is actually aware of the fact that its subordinates are regularly violating constitutional or statutory rights, and the supervisory power fails to implement a training program to quell this pattern, deliberate indifference exists." *Id.* (citations omitted). Finally, to survive a Rule 12(b)(6) motion, a plaintiff must allege a "causal nexus

between the failure to train and the complained of injury." *Id.* at 706 (citing *City of Canton*, 489 U.S. at 391).

Scarborough has adequately pleaded a failure-to-train claim.  As detailed above, she has alleged plausible violations of her First and Fourteenth Amendment rights against FCSB.  To establish the second element—failure on the part of FCSB to train its officials on First Amendment considerations for social media—Scarborough points to Defendants' failure to take screenshots of her posts; their failure to post any terms and conditions on their social-media pages; their failure to warn her that her comments could be deleted; and their failure to give her notice and an opportunity to be heard prior to deleting her comments and banning her from the platforms.  These acts and omissions, Scarborough argues, support the inference that these officials were never trained on First Amendment law and viewpoint discrimination as they relate to the use of social media.

Defendants make the valid point that this conclusion requires a leap of logic, and that the alleged failure of school officials to take certain actions in connection with Scarborough's critical social-media posts does not necessarily lead to the conclusion that FCSB failed to train them, or trained them inadequately.  Defendants may ultimately be proven correct on this point, but Scarborough's supposition is plausible enough to survive dismissal on the pleadings. *See, e.g.*, *Farrar v. City of Chi.*, 291 F. Supp. 2d 747, 753 (N.D. Ill. 2003) ("Plaintiff, however, consistently alleges that Defendant City of Chicago has a policy of failing to train police officers how to respond to domestic violence.  At this [Rule 12(b)(6)] stage of the proceedings, Plaintiff needs only provide Defendant City of Chicago with fair notice of her claim.  She has done so.").

By construing the Second Amended Complaint in the light most favorable to Scarborough, as this court must for a motion to dismiss, Scarborough's allegations regarding FCSB's failures are sufficient to infer that FCSB acted with deliberate indifference by failing to train their employees on sound social-media policies and the First Amendment. *See City of Canton*, 489 U.S. at 390 (explaining that city officials could "reasonably be said to have been deliberately indifferent" if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights."); *see also Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018) ("[A]nd if the school district nonetheless failed to provide those officials with any legal training on the subject—then the factfinder will be entitled (but not required) to infer that the school district acted with deliberate indifference to its students' Fourth Amendment rights."); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 627 (E.D. Va. 2000) ("In considering a motion to dismiss a complaint [under Rule 12(b)(6)], a court must construe the complaint in the light most favorable to the plaintiffs, read the complaint as a whole, and take the facts asserted therein as true." (citation omitted)). Moreover, Scarborough alleged that Mr. Edwards—FCSB's employee—messaged her on Facebook and espoused their "terms and conditions" as the reason she was blocked from Facebook. This indicates that Defendants made conscious decisions and had a policy about what was and was not allowed on their online platforms, further supporting Scarborough's claim. The court will therefore deny the motion to dismiss the failure-to-train claim.

## <u>CONCLUSION</u>

For these reasons, the court will grant in part and deny in part Defendants' motion to dismiss (ECF No. 37). The court will dismiss (1) Scarborough's equal protection claim as to all Defendants with prejudice and (2) her procedural due process claim only against Defendants Sovine and Angelo with prejudice. The motion will be denied in all other respects. The court will issue a separate order.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to counsel of record for Defendants, via ECF, and to Ms. Scarborough, by first-class mail.

**ENTERED** this 8th day of February, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE